UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL ANTHONY LYNCH, <br><br> Plaintiff, <br><br> v. <br><br> KEVIN BURNETT, et al., <br><br> Defendants. | Case No.: 18-cv-01677-DMS-JLB <br><br> **REPORT AND RECOMMENDATION RE: DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** <br><br> **[ECF No. 12]** |

On July 23, 2018, Plaintiff Paul Anthony Lynch ("Plaintiff"), a state prisoner proceeding *pro se* and *in forma pauperis*, commenced this civil rights action pursuant to 42 U.S.C. § 1983. (ECF No. 1.) On November 2, 2018, Plaintiff filed a First Amended Complaint ("FAC") against Defendants Matthew Botkin ("Botkin"), Zachary Pfannestiel ("Pfannestiel"), Christian Sharp ("Sharp"), and James Burnett ("Burnett") (collectively, "Defendants"). (ECF No. 5.) Presently before the Court is Defendants' motion to dismiss the FAC. (ECF No. 12.)

The Court submits this Report and Recommendation to United States District Judge Dana M. Sabraw pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1 of the United States District Court for the Southern District of California. After a thorough review of

Plaintiff's FAC and the parties' filings, and for the reasons discussed below, the Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's FAC be **GRANTED IN PART** and **DENIED IN PART**.

I. BACKGROUND

Plaintiff is a state prisoner currently residing at California State Prison, Sacramento. (FAC at 1.) The following facts are taken from Plaintiff's FAC:

On August 8, 2017, Botkin, a Sergeant with the San Diego Police Department ("SDPD"), arrived at Plaintiff's private residence in San Diego, California and requested that Plaintiff come outside and speak with him regarding a crime that had happened down the street at a neighbor's house. (*Id.* at 3.) Plaintiff asked if he was a suspect and Botkin responded, "Yes, you are a suspect." (*Id.*) Plaintiff responded that he had not done anything wrong, he had not broken the law, and he was not willing to speak with Botkin. (*Id.*) Botkin then stated, "Bring your 'faggot' ass out of your house or we will come in your house and drag your faggot ass out." (*Id.*) Plaintiff, a transgender male, stayed in his house as he feared for his life. (*Id.*)

Pfannestiel, a SDPD police officer, then arrived at Plaintiff's house and stepped inside the yard. (*Id.*) Pfannestiel told Plaintiff to come out of the house. (*Id.*) Plaintiff asked if he was going to be harmed and Pfannestiel responded, "No." (*Id.*) Pfannestiel then added, "If you don't come out of your house, I am going to come in your house and beat the shit out of you faggot and kill your dogs." (*Id.*)

Burnett, a SDPD detective, also arrived at Plaintiff's house and started speaking to him. (*Id.* at 3-4.) As Burnett was talking to Plaintiff, a SDPD K-9 officer took over the conversation and started giving his K-9 partner commands. (*Id.* at 4.)

Pfannestiel and other SDPD officers then entered Plaintiff's back door. (*Id.*) As they came running through Plaintiff's kitchen, Plaintiff exited his residence with his hands in the air. (*Id.*) He then exited his yard with his hands up and stopped several feet away from Burnett. (*Id.*) At the time Plaintiff exited his house he was wearing a white blouse, "reddish pinkish panties," and a pair of women's open-toe heels and had no weapons on

his person. (*Id.* at 4.)

Botkin then suddenly grabbed Plaintiff's hair from the back, yanked his neck back, and placed his thumb on Plaintiff's carotid artery, cutting off the blood supply to his brain and knocking him out. (*Id.*) Plaintiff lost consciousness while standing, and fell to the pavement, injuring his face, knees, and feet. (*Id.*) When Plaintiff regained consciousness, it was difficult for him to breathe and speak. (*Id.* at 7.) Minutes later, paramedics loaded Plaintiff onto a gurney and transported him to Mercy Hospital. (*Id.*)

Sharp, a SDPD lieutenant, was one of the supervisors on the scene at the time of the incident. (*Id.* at 5.)

In his FAC, Plaintiff claims that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment, and his Eighth and Fourteenth Amendment rights to medical care and to be free from cruel and unusual punishment. Defendants now move to dismiss Plaintiff's FAC on the basis that it fails to state a claim against Defendants upon which relief can be granted, and on the basis of qualified immunity as to Plaintiff's medical care claim. (ECF No. 12.)

## II. LEGAL STANDARD

### A. Motion to Dismiss for Failure to State a Claim

The Federal Rules of Civil Procedure require that a plaintiff's complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading standard that Rule 8 announces does not require detailed factual allegations, and the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

A motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), tests the legal sufficiency of the

3

18-cv-01677-DMS-JLB

his person. (*Id.* at 4.)

Botkin then suddenly grabbed Plaintiff's hair from the back, yanked his neck back, and placed his thumb on Plaintiff's carotid artery, cutting off the blood supply to his brain and knocking him out. (*Id.*) Plaintiff lost consciousness while standing, and fell to the pavement, injuring his face, knees, and feet. (*Id.*) When Plaintiff regained consciousness, it was difficult for him to breathe and speak. (*Id.* at 7.) Minutes later, paramedics loaded Plaintiff onto a gurney and transported him to Mercy Hospital. (*Id.*)

Sharp, a SDPD lieutenant, was one of the supervisors on the scene at the time of the incident. (*Id.* at 5.)

In his FAC, Plaintiff claims that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment, and his Eighth and Fourteenth Amendment rights to medical care and to be free from cruel and unusual punishment. Defendants now move to dismiss Plaintiff's FAC on the basis that it fails to state a claim against Defendants upon which relief can be granted, and on the basis of qualified immunity as to Plaintiff's medical care claim. (ECF No. 12.)

## II. LEGAL STANDARD

### A. Motion to Dismiss for Failure to State a Claim

The Federal Rules of Civil Procedure require that a plaintiff's complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading standard that Rule 8 announces does not require detailed factual allegations, and the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

A motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), tests the legal sufficiency of the

claims in the complaint. *See Twombly*, 550 U.S. at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In ruling on a Rule 12(b)(6) motion to dismiss, the court does not look at whether the plaintiff will "ultimately prevail but whether the [plaintiff] is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court must assume the truth of the facts presented and construe all inferences from them in the light most favorable to the nonmoving party. *Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

### B. Standards Applicable to *Pro Se* Litigants

With respect to an inmate who proceeds *pro se*, his factual allegations, "however inartfully pleaded," must be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (reaffirming that this standard applies to *pro se* pleadings post-*Twombly*). Thus, where a plaintiff appears *pro se* in a civil rights case, the Court must construe the pleadings liberally and afford plaintiff any benefit of the doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, in giving liberal interpretation to a *pro se* civil rights complaint, courts may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." *Jones v. Cmty. Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (internal quotation omitted).

4

Before dismissing a *pro se* civil rights complaint for failure to state a claim, the plaintiff should be given a statement of the complaint's deficiencies and an opportunity to cure. *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624-25 (9th Cir.1988). Only if it is absolutely clear that the deficiencies cannot be cured by amendment should the complaint be dismissed without leave to amend. *Id.*; *see also James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

## III. DISCUSSION

Defendants move to dismiss Plaintiff's Eighth Amendment claim that Defendants violated his right to be free from cruel and unusual punishment on the grounds that Plaintiff had not been convicted of a crime and was not incarcerated at the time of the alleged incident and therefore cannot state a cognizable claim under the Eighth Amendment. (ECF No. 12-1 at 4-5.) Defendants further move to dismiss Plaintiff's Fourteenth Amendment claim that Defendants failed to provide adequate medical care at the time of his arrest, claiming "[t]here is no right to post arrest medical care arising under the Fourteenth Amendment in the Ninth Circuit." (*Id.* at 5-6.) Defendants also move to dismiss Plaintiff's claim that Defendants failed to provide adequate medical care on the grounds of qualified immunity. (*Id.* at 6-7.) Defendants argue that "qualified immunity bars the claim because no clearly established law requires officers to provide purely diagnostic testing during or immediately following an arrest." (*Id.* at 2.)

### A. Freedom from Cruel and Unusual Punishment

Plaintiff claims Botkin violated his constitutional right to be free from cruel and unusual punishment by placing his thumb on Plaintiff's carotid artery, knocking him out, and allowing him to fall face forward onto the pavement while unconscious. (FAC at 3-7.) Plaintiff further claims that Burnett and Sharp violated his constitutional right to be free from cruel and unusual punishment because they were supervisors on the scene and failed to prevent the "physical assault" and protect Plaintiff. (*Id.* at 2-7.) Lastly, Plaintiff claims that Pfannestiel violated his constitutional right to be free from cruel and unusual punishment by being aggressive and threatening him while using his gender in a derogatory

5

manner. (*Id.* at 2.)

In his FAC, Plaintiff brings these claims against Defendants pursuant to the Eighth Amendment. (*See id.* at 3, 7.) However, as the FAC asserts that the alleged assault occurred in the process of officers arresting Plaintiff, the relevant constitutional provision is not the Eighth Amendment,[1] but rather the Fourth Amendment.[2] As the Supreme Court stated in *Graham*, "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." 490 U.S. at 395 (emphasis in original). *See also Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir. 2001) ("We examine the use of force to effect an arrest in light of the Fourth Amendment's prohibition on unreasonable seizures."). Accordingly, the Court liberally construes Plaintiff's excessive force claim to arise under the Fourth Amendment. *See Mendoza v. Jimmenez*, No. 3:18-cv-01608-WQH-WVG, 2018 WL 5761427, at *2 (S.D. Cal. Nov. 1, 2018) (liberally construing the *pro se* plaintiff's claim that defendant violated his right to be free from "cruel and unusual punishment" under the Eighth Amendment to arise under the Fourth Amendment instead); *see also Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) ("A complaint need not identify the statutory or

---

[1] As Defendants point out, "the Eighth Amendment's prohibition against the malicious or sadistic use of force does not apply until after conviction and sentence." *Pierce v. Multnomah County*, 76 F.3d 1032, 1042 (9th Cir. 1996) (citing *Hudson v. McMillian*, 503 U.S. 1 (1992); *Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989)) (internal citations and quotation marks omitted). At the time of the incident at issue, Plaintiff alleges that he was a private citizen in front of his residence. (FAC at 3.)

[2] In his opposition to Defendants' motion to dismiss, Plaintiff discusses his claims in terms of the Fourth Amendment. (*See* ECF No. 16.) Plaintiff states that he was "unaware that the constitution[al] violations by defendants ar[ose] under the Fourth Amendment instead of [the] 8th Amendment and 14th amendment . . . due to Plaintiff being confined in state prison at the time Plaintiff filed [his] complaint." (*Id.* at 6.) Defendants address Plaintiff's Fourth Amendment allegations in their reply. (ECF No. 17 at 4-5.)

constitutional source of the claim raised in order to survive a motion to dismiss."); *Willis v. City of Salem*, 404 F. App'x 116, 116-17 (9th Cir. 2010).

1. Legal Standard

Claims against law enforcement officers for the use of excessive force during an arrest are analyzed under the Fourth Amendment's "objective reasonableness" standard. *See Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014); *Graham*, 490 U.S. at 395-99; *Bryan v. MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010). The relevant question is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to [the officers'] intent or motivation." *Graham*, 490 U.S. at 397. In making this determination, the trier of fact must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks and citations omitted). In other words, "the type and amount of force inflicted" must be evaluated and weighed against such factors as "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994) (citing *Graham*, 490 U.S. at 396). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

2. Analysis

a. *Defendant Botkin*

Plaintiff claims Botkin violated his constitutional right to be free from cruel and unusual punishment by placing his thumb on Plaintiff's carotid artery, knocking him out, and allowing him to fall face forward onto the pavement while unconscious. (FAC at 3-6.) "A carotid hold involves the officer placing his or her arm around the individual's neck to 'constrict[] blood flow through the carotid artery, which supplies oxygenated blood to the brain.'" *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 944 n.2 (9th Cir. 2017)

7

(quoting *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1143 (N.D. Cal. 2009), *amended in part* (Sept. 8, 2009)). "If successful, '[u]nconsciousness occurs, which causes the individual's body to relax completely, but breathing continues uninterrupted.'" *Id.* (quoting *Knapps*, 647 F. Supp. at 1143). "[A] carotid restraint or hold can result in great bodily injury if the hold is in place long enough." *Ericson v. City of Phoenix*, No. CV-14-01942-PHX-JAT, 2016 WL 6522805, at *13 (D. Ariz. Nov. 3, 2016); *see also Brown v. Grinder*, No. 2:13-cv-01007-KJM-KJN, 2019 WL 280296, at *9 (E.D. Cal. Jan. 22, 2019) ("A carotid hold can constitute significant or even deadly force.") (collecting cases).

Here, accepting Plaintiff's allegations in his FAC as true, the Court finds that he has stated a plausible excessive force claim against Defendant Botkin under the Fourth Amendment. Although Plaintiff alleges that he originally refused to come out of his house, when he did exit his home, he alleges that he came out unarmed, wearing his underwear and heels, with his hands up, and stopped several feet in front of Burnett. He further alleges that Botkin approached him from behind and used the carotid hold without any warning. Therefore, Plaintiff has plausibly alleged that Botkin's use of a carotid hold was not objectively reasonable in light of the facts and circumstances confronting him.

Accordingly, the Court recommends that Defendants' motion to dismiss with respect to Plaintiff's claim of excessive force against Botkin be **DENIED**.

b. *Defendants Burnett and Sharp*

Plaintiff claims that Burnett and Sharp were supervisors on the scene who failed to prevent Botkin's "physical assault" and protect Plaintiff. (FAC at 2-6.) "An official may be liable as a supervisor only if either (1) he or she was personally involved in the constitutional deprivation, or (2) a sufficient causal connection exists 'between the supervisor's wrongful conduct and the constitutional violation.'" *Felarca v. Birgeneau*, 891 F.3d 809, 819-20 (9th Cir. 2018) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)). "The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a

constitutional injury." *Id.* at 820 (quoting *Starr*, 652 F.3d at 1207-08). *Cf. United States v. Koon*, 34 F.3d 1416, 1446 n.25 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 81 (1996) ("[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen."). "There is no respondeat superior liability under section 1983." *Felarca*, 891 F.3d at 820 (citing *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002)). "Officers may not be held liable merely for being present at the scene of a constitutional violation or for being a member of the same operational unit as a wrongdoer." *Id.* (citing *Jones*, 297 F.3d at 936-37).

Here, Plaintiff only alleges that Burnett and Sharp were present on the scene when Burnett used a carotid hold on him. He does not allege that they were personally involved in the "physical assault." Plaintiff also does not allege that Burnett or Sharp instructed Botkin to use such a hold, or any circumstances that suggest they could have prevented its use, as Plaintiff alleges the hold was used "suddenly" and without warning. *See Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000), *as amended* (Oct. 31, 2000) ("[O]fficers can be held liable for failing to intercede only if they had an opportunity to intercede."). As such, the Court does not find that Plaintiff has sufficiently alleged a plausible excessive force claim against Burnett or Sharp. Accordingly, the Court recommends that Defendants' motion to dismiss with respect to Plaintiff's claim of excessive force against Burnett and Sharp be **GRANTED**.

### c. *Defendant Pfannestiel*

Plaintiff additionally claims that Pfannestiel was aggressive and threatened him by using his gender in a derogatory manner. (FAC at 2.) Allegations of verbal harassment or abuse uttered by state actors—standing alone—are not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983. *Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997) (citing *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987), *overruled in part on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008)). Accordingly, the Court recommends that Defendants' motion to dismiss with respect to Plaintiff's claim of excessive force against Pfannestiel on the basis of verbal threats be **GRANTED**.

B.   **Right to Medical Care**

Plaintiff claims that Defendants violated his constitutional right to medical care in violation of the Eighth and Fourteenth Amendments. (FAC at 7.) Plaintiff asserts this claim under both the Eighth and Fourteenth Amendments. Because, as addressed above, the FAC alleges that this claim arises out of Plaintiff's arrest, the relevant constitutional provision is the Fourth Amendment. In *Tatum v. City & County of San Francisco*, 441 F.3d 1090 (9th Cir. 2006), the Ninth Circuit concluded that claims of deficient post-arrest medical care should be analyzed under the Fourth Amendment. *Id.* at 1098-99. Accordingly, the Court liberally construes Plaintiff's claim against Defendants for failure to provide adequate post-arrest medical care to arise under the Fourth Amendment. *See Alvarez*, 518 F.3d at 1157.

The Fourth Amendment requires law enforcement officers to provide objectively reasonable post-arrest care. *Tatum*, 441 F.3d at 1099. The Ninth Circuit has not prescribed the exact contours of what constitutes objectively reasonable post-arrest care. *See Mejia v. City of San Bernardino*, No. EDCV 11-00452 VAP, 2012 WL 1079341, at *5 n.12 (C.D. Cal. Mar. 30, 2012) (citing *Tatum*, 441 F.3d at 1099). At a minimum, however, the Ninth Circuit has required police officers to "seek necessary medical attention by promptly summoning help or taking the injured arrestee to a hospital." *Estate of Cornejo ex rel. Solis v. City of Los Angeles*, 618 F. App'x. 917, 920 (9th Cir. 2015) (citing *Tatum*, 441 F.3d at 1099); *see also City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 245 (1983) ("Whatever the standard may be, [the defendant] fulfilled [his] constitutional obligation by seeing that [the apprehended person] was taken promptly to the hospital that provided the treatment necessary for his injury.").

In *Tatum*, for example, the Ninth Circuit held that "a police officer who promptly summons the necessary medical assistance has acted reasonably for purposes of the Fourth Amendment" where the arrestee's labored breathing after being handcuffed made it clear he was in distress. *Tatum*, 441 F.3d at 1099 (citing *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1415 (9th Cir. 1986)). The Ninth Circuit specifically held that the officers in

*Tatum* did not violate the Fourth Amendment by failing to perform CPR, because officers are not required to provide "what hindsight reveals to be the most effective medical care for an arrested suspect." *Id.* at 1098-99.

Here, accepting Plaintiff's allegations in his FAC as true, the Court finds that he has not stated a plausible claim against Defendants under the Fourth Amendment arising from their alleged failure to provide adequate medical care after Botkin applied the carotid hold. (FAC at 7.) Plaintiff alleges that when he regained consciousness, it was difficult for him to breathe and speak. (*Id.*) However, he further alleges that "[m]inutes later," paramedics loaded Plaintiff onto a gurney and transported him to Mercy Hospital. (*Id.*) The Constitution does not require more. *See Tatum*, 441 F.3d at 1099 ("[T]he critical inquiry is not whether the officers did all that they could have done, but whether they did all that the Fourth Amendment requires. Here, the officers promptly requested medical assistance, and the Constitution required them to do no more.").

Accordingly, the Court recommends that Defendants' motion to dismiss with respect to Plaintiff's claim for failure to provide adequate medical care against Defendants be **GRANTED**.

### C. Leave to Amend

"Pro se plaintiffs should be given an opportunity to amend their complaints to overcome any deficiencies unless it clearly appears the deficiency cannot be overcome by amendment." *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986). Defendants argue that Plaintiff should not be given leave to amend his FAC. (ECF Nos. 12, 17.) Plaintiff, however, contends that he can add additional allegations demonstrating violations of his Fourth Amendment rights. (*See* ECF No. 16.) The Court cannot find at this point that Plaintiff will be unable to allege additional facts sufficient to overcome the deficiencies addressed herein. Accordingly, the Court recommends that Plaintiff be granted leave to file a second amended complaint.

///

///

11

18-cv-01677-DMS-JLB

## IV. CONCLUSION

For the reasons discussed above, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) accepting this Report and Recommendation; (2) **DENYING** Defendants' Motion to Dismiss Plaintiff's excessive force claim against Defendant Botkin arising under the Fourth Amendment; and (3) **GRANTING** Defendants' Motion to Dismiss Plaintiff's excessive force claim against Defendants Pfannestiel, Sharp, and Burnett arising under the Fourth Amendment, with leave to amend; and (4) **GRANTING** Defendants' Motion to Dismiss Plaintiff's failure to provide adequate medical care claim against Defendants, with leave to amend.

**IT IS ORDERED** that no later than **July 11, 2019**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **July 25, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: June 20, 2019

Hon. Jill L. Burkhardt
United States Magistrate Judge