# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL ANTHONY LYNCH, <br><br> Plaintiff, <br><br> v. <br><br> KEVIN BURNETT, et al., <br><br> Defendants. | Case No.: 18-cv-01677-DMS-JLB <br><br> **REPORT AND RECOMMENDATION RE: DEFENDANT JAMES BURNETT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** <br><br> **[ECF No. 28]** |

On July 23, 2018, Plaintiff Paul Anthony Lynch ("Plaintiff"), a state prisoner proceeding *pro se* and *in forma pauperis*, commenced this civil rights action pursuant to 42 U.S.C. § 1983. (ECF Nos. 1, 3.) On November 2, 2018, Plaintiff filed a First Amended Complaint ("FAC") against Defendants Matthew Botkin ("Botkin"), Zachary Pfannestiel ("Pfannestiel"), Christian Sharp ("Sharp"), and James Burnett ("Burnett" or "Defendant"). (ECF No. 5.)

All defendants moved to dismiss the FAC. (ECF No. 12.) The undersigned issued a Report and Recommendation, recommending that the Court (1) deny the motion as to Plaintiff's excessive force claim against Botkin; (2) grant the motion as to Plaintiff's excessive force claim against Pfannestiel, Sharp, and Burnett, with leave to amend; and (3)

grant the motion as to Plaintiff's failure to provide adequate medical care claim against all defendants, with leave to amend. (ECF No. 23.) On July 22, 2019, the Honorable Dana M. Sabraw, United States District Judge, adopted the Report and Recommendation and gave Plaintiff an opportunity to file a Second Amended Complaint. (ECF No. 25.)

On August 5, 2019, Plaintiff filed a Second Amended Complaint ("SAC") against Burnett only. (ECF No. 27.) Presently before the Court is Burnett's motion to dismiss the SAC. (ECF No. 28.) Plaintiff filed an opposition to the motion (ECF No. 30), and Burnett filed a reply in support (ECF No. 31).

The Court submits this Report and Recommendation to Judge Sabraw pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1 of the United States District Court for the Southern District of California. After a thorough review of Plaintiff's SAC and the parties' filings, and for the reasons discussed below, the Court **RECOMMENDS** that Burnett's motion to dismiss Plaintiff's SAC be **DENIED**.

## I. BACKGROUND

Plaintiff is a state prisoner currently residing at California State Prison, Sacramento. (SAC at 1.) The following facts are taken from Plaintiff's SAC:

On August 8, 2017, Botkin, a Sergeant with the San Diego Police Department ("SDPD"), arrived at Plaintiff's private residence in San Diego, California and requested that Plaintiff come outside and speak with him regarding a crime that had happened down the street at a neighbor's house. (*Id.* at 3.) Plaintiff asked if she was a suspect and Botkin responded, "Yes, you are a suspect." (*Id.*) Plaintiff responded that she had not done anything wrong, she had not broken the law, and she was not willing to speak with Botkin. (*Id.*) Botkin then stated, "Bring your faggot ass out of your house or we will come in your house and drag your faggot ass out." (*Id.*) Plaintiff, a transgender male,[1] stayed in her

---

[1] In her SAC, Plaintiff identifies herself as a transgender male. (*Id.* at 3.) Throughout her Opposition, Plaintiff uses female pronouns when referring to herself, so the Court does the same.

2

house as she feared for her life. (*Id.*) As more SDPD officers arrived, Plaintiff became more fearful that the officers would kill her or commit bodily injury to her person. (*Id.*)

Burnett, an SDPD detective, also arrived at Plaintiff's house and started speaking to her. (*Id.*) During the conversation, Plaintiff heard her back door open and saw Pfannestiel, an SDPD police officer, along with other SDPD officers, running through her kitchen. (*Id.*) As they came running through the kitchen, Plaintiff exited her home into her front yard with her hands in the air. (*Id.*)

As Plaintiff exited, Burnett was standing right there. (*Id.*) Plaintiff yelled, "Burnett, don't let them hurt me." (*Id.* at 3-4.) Following Burnett's directions, Plaintiff walked quickly towards Burnett with her hands in the air. (*Id.* at 4.) Burnett then grabbed Plaintiff's right arm and held it, allowing Botkin to grab Plaintiff from the back, pull her hair, yank her neck back, and place his thumb into her carotid artery. (*Id.*) Botkin's actions cut off Plaintiff's blood supply to her brain, which knocked her out while she was standing in an upright position and caused her to fall face forward onto the hot pavement. (*Id.*) The fall caused Plaintiff injuries to her face, knees, and feet. (*Id.*)

Plaintiff was not a threat to the officers or Burnett. (*Id.*) She exited her home with her hands in the air and surrendered to Burnett. (*Id.*) Plaintiff had no weapons and was wearing a white blouse, panties, and a pair of open-toe high heels at the time she exited her home. (*Id.*) Burnett had control of the situation, but he chose to hold Plaintiff while Botkin grabbed her and placed a carotid hold. (*Id.*) Burnett failed to stop Botkin from "attempting to kill" Plaintiff. (*Id.*) Instead, Burnett elected to allow Botkin "to attempt to kill [Plaintiff] due to [her] gender association." (*Id.*)

Based on the foregoing, Plaintiff claims that Burnett violated her Fourth Amendment right to be free from cruel and unusual punishment. (*Id.* at 3-4.) Burnett now moves to dismiss Plaintiff's SAC pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis that it fails to state a claim against him upon which relief can be granted. (ECF No. 28.)

///

///

## II. LEGAL STANDARD

### A. Motion to Dismiss for Failure to State a Claim

The Federal Rules of Civil Procedure require that a plaintiff's complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading standard that Rule 8 announces does not require detailed factual allegations, and the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

A motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), tests the legal sufficiency of the claims in the complaint. *See Twombly*, 550 U.S. at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In ruling on a Rule 12(b)(6) motion to dismiss, the court does not look at whether the plaintiff will "ultimately prevail but whether the [plaintiff] is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court must assume the truth of the facts presented and construe all inferences from them in the light most favorable to the nonmoving party. *Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

### B. Standards Applicable to *Pro Se* Litigants

With respect to an inmate who proceeds *pro se*, his factual allegations, "however inartfully pleaded," must be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (reaffirming that this standard applies to *pro se* pleadings post-*Twombly*). Thus, where a plaintiff appears *pro se* in a civil rights case, the Court must construe the pleadings liberally and afford plaintiff any benefit of the doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, in giving liberal interpretation to a *pro se* civil rights complaint, courts may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." *Jones v. Cmty. Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (internal quotation omitted).

Before dismissing a *pro se* civil rights complaint for failure to state a claim, the plaintiff should be given a statement of the complaint's deficiencies and an opportunity to cure. *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624-25 (9th Cir.1988). Only if it is absolutely clear that the deficiencies cannot be cured by amendment should the complaint be dismissed without leave to amend. *Id.*; *see also James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

### III. DISCUSSION

Burnett moves to dismiss Plaintiff's Fourth Amendment claim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (ECF No. 28.)[2]

---

[2] Plaintiff characterizes her claim as a "Fourth Amendment Violation [-] Freedom from cruel and unusual punishment." (ECF No. 27 at 3.) As an initial matter, Burnett points out that the right to be free from cruel and unusual punishment is an Eighth Amendment right, not a Fourth Amendment right, and Burnett argues that "Plaintiff is not afforded the protections of the Eighth Amendment" because at the time of the events at

5

**A. Legal Standard**

Claims against law enforcement officers for the use of excessive force during an arrest are analyzed under the Fourth Amendment's "objective reasonableness" standard. *See Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014); *Graham v. Connor*, 490 U.S. 386, 395-99 (1989); *Bryan v. MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010). The relevant question is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to [the officers'] intent or motivation." *Graham*, 490 U.S. at 397. In making this determination, the trier of fact must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks and citations omitted). In other words, "the type and amount of force inflicted" must be evaluated and weighed against such factors as "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994) (citing *Graham*, 490 U.S. at 396). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

/ / /

/ / /

---

issue, she had not been convicted of any crime and had not been sentenced. (*See* ECF No. 28-1 at 4-5.) However, as Plaintiff is, in substance, alleging a Fourth Amendment excessive force claim for failure to protect, the Court will liberally construe it as such. *See Skinner v. Switzer*, 562 U.S. 521, 530 (2011) ("[A] complaint need not pin plaintiff's claim for relief to a precise legal theory" or include "exposition of his legal argument," so long as it constitutes a "plausible 'short and plain' statement of the plaintiff's claim."); *see also Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) ("A complaint need not identify the statutory or constitutional source of the claim raised in order to survive a motion to dismiss.").

**B. Analysis**

Plaintiff claims that Burnett failed to protect her from Botkin's alleged assault and attempt to kill her. (SAC at 2-6.) "Pursuant to a long line of civil cases, police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), *rev'd in part on other grounds by Koon v. United States*, 518 U.S. 81 (1996). In such cases, "the constitutional right violated by the passive defendant is analytically the same as the right violated by the person who strikes the blows." *Id.* "Thus[,] an officer who failed to intercede when his colleagues were depriving a victim of his Fourth Amendment right to be free from unreasonable force in the course of an arrest would, like his colleagues, be responsible for subjecting the victim to a deprivation of his Fourth Amendment rights." *Id.*

However, "officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000); *see e.g., Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1159-60 (N.D. Cal. 2009), *amended in part* (Sept. 8, 2009) (finding after a bench trial that the defendant officers "did not have a realistic opportunity to intercede" because "the violation [a carotid hold] happened so quickly"). "Officers may not be held liable merely for being present at the scene of a constitutional violation or for being a member of the same operational unit as a wrongdoer." *Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018) (citing *Jones v. Williams*, 297 F.3d 930, 936-37 (9th Cir. 2002)).

In this case, the Court previously held that Plaintiff sufficiently alleged a Fourth Amendment excessive force claim against Botkin based on substantially the same set of facts alleged in the SAC.[3] (*See* ECF Nos. 23; 25.) In the SAC, Plaintiff alleges that

---

[3] The Court notes that, although Plaintiff refers to Botkin as a defendant in her Opposition (*see* ECF No. 30 at 3-4), Botkin is no longer a defendant in this case because Plaintiff did not name him as a defendant in the SAC. The SAC superseded (*i.e.*, replaced) Plaintiff's prior complaint. *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) ("It is well-established in our circuit that an amended complaint supersedes

7

although she initially refused to come out of her house to speak to the officers, when she did exit her home, she came out without weapons, wearing underwear, a blouse, and heels, and had her hands up. (SAC at 3-4.) As instructed by Burnett, she walked quickly towards Burnett, keeping her hands in the air. (*Id.*) Plaintiff further alleges that Burnett grabbed her right arm and had control of the situation when Botkin used a carotid hold[4] on her. (*Id.* at 4.) The carotid hold cut off Plaintiff's blood supply and caused her to fall face forward onto the pavement, causing injuries. (*Id.*) Accepting these allegations as true, the Court finds, as it did previously, that Plaintiff has plausibly alleged that Botkin's use of a carotid hold was not objectively reasonable in light of the facts and circumstances confronting him. (*See* ECF No. 23 at 7-8.)

Taking the foregoing into consideration, the Court finds that Plaintiff has plausibly alleged a Fourth Amendment excessive force claim against Burnett. Accepting Plaintiff's allegations as true, Burnett was not merely present at the scene of the alleged constitutional violation. Plaintiff alleges in the SAC that Burnett grabbed her right arm and held it,

---

the original, the latter being treated thereafter as non-existent.") (internal quotation marks and citation omitted); *see also* CivLR 15.1.a ("Every pleading to which an amendment is permitted as a matter of right or has been allowed by court order, must be complete in itself without reference to the superseded pleading.") Plaintiff may have intended to include Botkin in the SAC or she be under the misapprehension that she did so, but she did not.

[4] "A carotid hold involves the officer placing his or her arm around the individual's neck to 'constrict[] blood flow through the carotid artery, which supplies oxygenated blood to the brain.'" *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 944 n.2 (9th Cir. 2017) (quoting *Knapps*, 647 F. Supp. 2d at 1143). "If successful, '[u]nconsciousness occurs, which causes the individual's body to relax completely, but breathing continues uninterrupted.'" *Id.* (quoting *Knapps*, 647 F. Supp. at 1143). "[A] carotid restraint or hold can result in great bodily injury if the hold is in place long enough." *Ericson v. City of Phoenix*, No. CV-14-01942-PHX-JAT, 2016 WL 6522805, at *13 (D. Ariz. Nov. 3, 2016); *see also Brown v. Grinder*, No. 2:13-cv-01007-KJM-KJN, 2019 WL 280296, at *9 (E.D. Cal. Jan. 22, 2019) ("A carotid hold can constitute significant or even deadly force.") (collecting cases).

1 "allowing" Botkin to grab her from the back, pull her hair, yank her neck back, and place
2 his thumb into her carotid artery. (SAC at 4.) Defendant argues that "the SAC does not
3 contain any facts that allow an inference the occurrence lasted more than a few seconds,"
4 and therefore "Burnett did not have a realistic opportunity to intervene." (ECF No. 31 at
5 3.)[5] The Court disagrees. In addition to alleging that Burnett's restraint of Plaintiff
6 facilitated Botkin's actions, Plaintiff's SAC adequately alleges Burnett had an opportunity
7 to intercede and failed to do so. Accordingly, the Court recommends denying Burnett's
8 motion to dismiss.

## IV.   CONCLUSION

For the reasons discussed above, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) accepting this Report and Recommendation; and (2) **DENYING** Burnett's motion to dismiss the SAC (ECF No. 28).

**IT IS ORDERED** that no later than **November 19, 2019**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **December 20, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to raise

///
///
///
///
///

---

[5] The Court notes that Burnett relies on several additional "facts" in his motion to dismiss and his reply that are not alleged in the SAC. (*See* ECF Nos. 28-1 at 6-7; 31 at 4.) However, the Court's review is limited to the "contents of the complaint." *See Buckey*, 968 F.2d at 791. Therefore, the Court will limit its review to the allegations in the SAC.

those objections on appeal of the Court's order. *See Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: October 29, 2019

Hon. Jill L. Burkhardt
United States Magistrate Judge